A04A2320. IN THE INTEREST OF E. C. et al., children.
(609 SE2d 381)

RUFFIN, Presiding Judge.

The Richmond County Department of Family and Children Services (DFCS) alleged that E. C. and S. C., minor children in their mother's custody, were deprived. Following a hearing, the juvenile court issued an order entitled "Order Transferring Custody" in which it found the children deprived and awarded custody of the children to various family members. The mother appeals, arguing that insufficient evidence supported the juvenile court's finding of deprivation. The mother also argues that the juvenile court lacked jurisdiction. For reasons that follow, we reverse.

1. "On appeal from a finding that a child is deprived, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived."[1] Viewed in this light, the evidence shows that the mother has a son, E. C., age six, and a daughter, S. C., age four, by two different men. The son was fathered by Curtis Colter,[2] who is married to Crystal Colter. In August 2003, shortly after Colter's paternity was established, Crystal contacted DFCS, stating that she and "other family members [were] very concerned about the children's home life." According to an affidavit prepared by a DFCS case manager, Melvin Ransom, the mother is in a lesbian relationship with Angela Martin. Crystal also informed DFCS that the mother "ha[d] broken down to two different childcare providers about . . . being beaten by [Martin]" and that the mother had attempted suicide.

According to Ransom's affidavit, he contacted E. C., who told him that his mother and Martin smoked marijuana in the house. With respect to the allegations of violence, E. C. told Ransom that his mother and Martin argued, but that he had not seen Martin hit his mother. Ransom's affidavit showed that DFCS also spoke with several others regarding allegations of physical violence in the home.

As a result of the allegations, the mother was required to sign a safety plan in which she agreed the children would have no contact

---

[1] (Punctuation omitted.) *In the Interest of E. M.*, 264 Ga. App. 277, 278 (590 SE2d 241) (2003).

[2] The daughter was fathered by Robert Sessoms.

with Martin. The plan was signed on August 29, 2003. That night, the mother was supposed to work at a restaurant where she was a waitress. Because Martin normally provided child care, the mother stayed home. The next night, August 30, the mother asked her sister to watch the children. Apparently, the sister was unable to keep the children the entire time, and she took them to the home of Martin's mother. Later that night, DFCS learned that Martin was at her mother's house while the children were present, and it removed the children from the home.

On September 2, 2003, the juvenile court conducted a detention hearing. Based upon the alleged violation of the safety plan, the children were taken into DFCS custody. The juvenile court also appointed a guardian ad litem, Al Yarbrough, to investigate the allegations of deprivation.

DFCS subsequently filed a deprivation petition, and the juvenile court conducted a hearing.[3] At the beginning of the hearing, the mother's lawyer requested that the children be placed in the mother's custody, and the juvenile court responded, DFCS "says I can't do that." The hearing then began, but DFCS called no witnesses. However, Colter's attorney called witnesses to testify regarding the Colters' fitness to serve as E. C.'s custodial family. The attorney also called a witness who testified that the children's maternal grandparents would be able to care for the children.

The mother's attorney then called witnesses, including both Yarbrough, the guardian ad litem, and Priscilla Germany, the current DFCS caseworker. In his report, Yarbrough wrote that his "investigation found little solid evidence for [the] allegations" of domestic violence. And Germany testified that the mother "has been working on her case plan" and had done everything DFCS had requested. Although the mother had yet to complete a drug assessment and treatment plan, the delay was caused by DFCS rather than any reticence on the part of the mother. When asked for her recommendation, Germany said that she thought the children could be returned to their mother and that DFCS would continue to monitor the case for six months.

Following the hearing, the juvenile court found the children to be deprived, and it awarded custody of E. C. to his biological father and custody of S. C. to her maternal grandparents. On appeal, the mother argues that insufficient evidence supports the juvenile court's finding of deprivation. We agree.

At the outset, we note that DFCS neither called nor cross-examined a single witness during the deprivation hearing. Thus,

---

[3] The hearing began on November 24, 2003, and was continued to December 15, 2003.

DFCS must rely primarily on the report and affidavit prepared by Ransom to support the deprivation finding. Pursuant to OCGA § 15-11-56, in a custody matter or dispositional proceeding, "all information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its *probative* value even though not otherwise competent in the hearing on the petition."[4] Apparently, DFCS believes that this Code section permits the court to consider hearsay contained in the report and affidavit in making its finding. However, it is well settled that hearsay lacks probative value, even if unobjected to.[5] Thus, to the extent reports contain hearsay, the juvenile court must disregard it.[6]

"[D]uring a nonjury trial, it is presumed that the court is able to sift the wheat from the chaff and select only the legal evidence. We will reverse the trial court only where there is no legal evidence to support the trial court's ruling."[7] Here, we are unable to make such presumption because it is clear from the juvenile court's order that it premised its ruling, in large part, on hearsay.[8] The court based its deprivation finding upon the following: (1) Ransom's conclusion that Martin physically abused the mother in the presence of the children; (2) the report from family members that there was domestic violence between the mother and Martin; (3) the fact that the mother had admitted to "us[ing] marijuana in the past on a regular basis"; (4) the mother's failure to submit to a drug screen within 24 hours; and (5) the fact the mother is engaged in a lesbian relationship.

The first two reasons cited for the deprivation — the alleged domestic abuse — are supported only by hearsay contained in Ransom's report and affidavit. At the hearings, DFCS did not ask a *single question* of any witness regarding allegations of abuse, and no witness gave competent testimony about such abuse. The evidence required to support a finding of deprivation must be not only clear and convincing, but also competent.[9] As there is no competent evidence to support this factual finding, it must be discounted.

---

[4] (Emphasis supplied.)

[5] See *In the Interest of B. W.*, 268 Ga. App. 862, 863 (602 SE2d 869) (2004); *In the Interest of C. G.*, 261 Ga. App. 814 (1) (584 SE2d 33) (2003); *In the Interest of C. A.*, 249 Ga. App. 280, 282 (2) (548 SE2d 37) (2001).

[6] See *In the Interest of O. J.*, 257 Ga. App. 1, 4 (2) (570 SE2d 79) (2002) (" 'To the degree any such [reports] contained hearsay, the courts are presumed to have disregarded it.' "); *In the Interest of J. C.*, 242 Ga. 737, 740-741 (3) (251 SE2d 299) (1978).

[7] (Punctuation omitted.) *In the Interest of T. D. B.*, 266 Ga. App. 434, 442 (4) (597 SE2d 537) (2004).

[8] See *In the Interest of C. D. E.*, 248 Ga. App. 756, 764-765 (2) (546 SE2d 837) (2001).

[9] See *In the Interest of E. M.*, supra.

Similarly, there is no competent evidence that the mother smoked marijuana on a regular basis. Although the mother told Ransom that she had smoked marijuana "on occasion," DFCS never sought further clarification of the issue. And "on occasion" and "on a regular basis" are not necessarily synonymous. Moreover, DFCS completely failed to establish how this conduct was relevant to a finding of deprivation.[10]

Although the juvenile court found that the mother had failed to timely obtain a drug test, there is no evidence to support this finding. Rather, Germany testified that the mother had done everything asked of her and that the only reason the drug test had not been performed was because it had not been scheduled by DFCS. And the mother cannot be held accountable for DFCS' failure to schedule the test.

Thus, the only remaining basis for the juvenile court's ruling is the fact the mother is involved in a lesbian relationship. However, deprivation focuses on the "needs of the child regardless of parental fault."[11] As this Court recently noted,

to authorize a loss of temporary custody by a child's parent[ ], on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.[12]

Assuming that the mother's relationship with Martin should factor into the juvenile court's analysis, it should not be a determining factor unless it is shown that the children have been or might be harmed in some manner by their mother's lifestyle.[13] Here, DFCS made no effort whatsoever to demonstrate that the children are deprived, much less that such deprivation results from the mother's lifestyle. Given the lack of evidence that the children are deprived,

---

[10] See *In the Interest of C. D. E.*, supra at 767 ("The issue in a deprivation hearing involving a transfer of custody . . . is not whether the parent has committed illegal acts, but whether there is 'intentional or unintentional misconduct resulting in the abuse or neglect of the child or . . . what is tantamount to physical or mental incapability to care for the child.' ").

[11] See *In the Interest of E. M.*, supra.

[12] (Punctuation omitted.) *In the Interest of C. D. E.*, supra at 760-761 (1).

[13] See *In the Interest of R. E. W.*, 220 Ga. App. 861, 863 (471 SE2d 6) (1996) (father's homosexuality did not merit restrictive visitation absent evidence that child was exposed to father's conduct in a manner that is harmful).

the juvenile court erred in removing the children from their mother's custody.[14]

2. In view of our holding in Division 1, we need not address the mother's remaining enumeration of error.

*Judgment reversed. Eldridge and Adams, JJ., concur.*

DECIDED DECEMBER 16, 2004.

*Kutner & Bloom, Jean M. Kutner, Elizabeth L. Littrell, Margaret F. Garrett, Gerald R. Weber, Jr., for appellant.*

*Thurbert E. Baker, Attorney General, William C. Joy, Shalen S. Nelson, Senior Assistant Attorneys General, Charissa A. Ruel, Assistant Attorney General, Claeys, McElroy & McGruder, John P. Claeys, for appellee.*

---

[14] See *In the Interest of E. M.*, supra at 281; *In the Interest of C. D. E.*, supra at 761-762, 766-767.