## A05A0475. ACE TECHNOLOGIES, INC. v. PMCS, INC.
### (618 SE2d 720)

SMITH, Presiding Judge.

Following a bench trial, the trial court entered judgment in favor of PMCS, Inc., one of the parties to a contract dispute. Because that judgment appears to have been based on hearsay, we are constrained to reverse and remand this case to the trial court for proceedings consistent with this opinion.

The evidence presented during the trial of this case shows that Ace Technologies, Inc. is a temporary staffing business that provides software development programming and other information technology (IT) services to companies. PMCS is a management consulting firm that also provides IT services on a temporary basis to companies in need of those services. The president and CEO of PMCS is Allena Kendrick. PMCS and Ace entered into a contract under which Krishna Mande, an Ace employee, was supplied to PMCS for a technology project with Sprint. PMCS supplied Mande to a company called Berean Group International [BGI], who worked on the project. As described by the trial court, "[u]nder the contractual scheme, PMCS contracted with [BGI] who in turn contracted with other companies and ultimately with Sprint. PMCS' profit was based on the difference [between] the hourly wage they were paying to Ace [and] the hourly wage they were paid by [BGI]." The agreement between Ace and PMCS contained covenants restricting Ace from entering into contracts with other entities involved in the project, as well as a confidentiality clause prohibiting Mande from disclosing any "financial arrangement."

Kendrick testified that in April or May 2002, PMCS contacted BGI, and BGI had another entity involved with the project "discuss with [Mande] who he actually worked for and what his rates were." At that time, BGI was paying $65 per hour to PMCS for Mande's services. She testified that BGI then "reduced our rates to $55 an hour since they found out our rates were too high." According to Kendrick, "[w]e were told by BGI either we accept the rates or we lose the contract totally."

The agreement between PMCS and BGI terminated on December 31, 2002. During negotiations for a new contract, PMCS instructed Mande not to report to work. It appears that after receiving this instruction Mande may have continued to work on the Sprint project. Kendrick testified that PMCS and BGI planned to negotiate a new contract but that "[t]he contract fell apart because . . . we had our consultants working without our permission and presenting themselves to Sprint PCS. . . . BGI decided we should lower our rates. . . . So we basically said that we could not negotiate any further and the negotiation stopped."

Ace subsequently filed this action against PMCS seeking outstanding amounts due on Ace's invoices to PMCS. PMCS answered and counterclaimed, seeking damages for breach of contract, violation of the covenant not to compete clause, tortious interference with business and contractual relations, punitive damages, and attorney fees. Following a bench trial, the trial court entered judgment in favor of PMCS. It concluded in relevant part:

The evidence in this case established that Ace breached the contract in at least two respects. First, there is evidence that the financial arrangements were disclosed to [BGI], which resulted in the forced lowering of PMCS' contract rate with [BGI]. Second, despite PMCS' clear instruction to stand down from work, Ace's employees continued to work. As a result, PMCS lost its contract with [BGI] for 2003. Further, the Court concludes that Ace's conduct amounted to tortious interference with PMCS' contractual and business relationships with [BGI], which resulted in economic loss to PMCS.

The court concluded that PMCS had proved its damages at trial and noted that PMCS had set off a certain sum, which it stipulated it owed to Ace on the contract through December 2002. The court entered judgment in favor of PMCS on its counterclaim in the amount of $111,895 and attorney fees of $8,308.50. Ace appeals from this judgment.

We agree with Ace that reversal is required. Implicit in the trial court's conclusion concerning the disclosure of "financial arrangements" to BGI is that Ace or Mande was responsible for that disclosure. But the only testimony concerning this alleged breach of confidentiality was that of Kendrick, who testified that BGI caused another entity to discuss Mande's hourly rate with Mande. No representative of BGI or any other entity testified, nor did Mande testify. Even if Kendrick's testimony could be construed as indicating that Ace or Mande breached any confidentiality provision, it amounted to speculative hearsay, and hearsay has no probative value even absent objection. *In the Interest of E. C.*, 271 Ga. App. 133, 135 (609 SE2d 381) (2004); see also *Sumter Regional Hosp. v. Sumter Free Press*, 248 Ga. App. 780, 782 (1) (546 SE2d 831) (2001).

The trial court further concluded that contract negotiations ended because Mande continued to work on the Sprint project despite instructions not to do so. But even if Mande was aware of and ignored these instructions, the record does not contain probative evidence showing that these facts caused the breakdown of negotiations. Kendrick testified that BGI decided that PMCS should lower its

rates, ostensibly because Mande had reported to work without authorization. But again, no representative of BGI testified, and Kendrick's testimony is hearsay. No other evidence establishes a connection between Mande's conduct and the breakdown of negotiations.

Of course, "[d]uring a nonjury trial, it is presumed that the court is able to sift the wheat from the chaff and select only the legal evidence. We will reverse the trial court only where there is no legal evidence to support the trial court's ruling." (Citation, punctuation and footnote omitted.) *In the Interest of E. C.*, supra, 271 Ga. App. at 135 (1). But "[h]ere, we are unable to make such presumption because it is clear from the . . . court's order that it premised its ruling . . . on hearsay." (Citation and footnote omitted.) Id. The evidence did not show that Mande or Ace breached any confidentiality clause or otherwise interfered with contract negotiations between BGI and PMCS. The trial court therefore erred in granting judgment to PMCS on its counterclaim, and that judgment must be reversed. It follows that the award of attorney fees to PMCS was unauthorized and must be reversed as well. See *Ellis v. Gallof*, 220 Ga. App. 518, 519 (1) (469 SE2d 288) (1996) (attorney fees available only to prevailing party).

We note that in its judgment below, the trial court stated that "[i]n its proof of damages, PMCS set off the sum of $43,225.00, the amounts it stipulated were owed to Ace on the contract" at issue. In the original opinion issued by this court on July 14, 2005, we reversed the trial court's judgment, but we did not expressly refer to the set-off. We have granted Ace's motion for reconsideration in order to reverse and remand this case for further proceedings consistent with our opinion, including the proper calculation of judgment in favor of Ace, as well as interest and attorney fees, if applicable.

*Judgment reversed and case remanded. Ellington and Adams, JJ., concur in the judgment only.*

DECIDED JULY 28, 2005.

*James W. Penland*, for appellant.
*Weissman, Nowack, Curry & Wilco, Ralph L. Taylor III*, for appellee.