631 S.E.2d 110 (2006)
279 Ga. App. 319
In the Interest of K.W. et al., children.
No. A06A0586.
Court of Appeals of Georgia.
May 11, 2006.
Eric A. Ballinger, Canton, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Hope M. Pereira, Susan C. Stanton, Woodstock, for appellee.
BERNES, Judge.
The biological mother of K.W. and J.W. appeals from the order entered by the *111 Juvenile Court of Cherokee County finding her children deprived under OCGA § 15-11-2(8)(A).[1] The mother contends that the evidence did not support a finding of deprivation. For the reasons set forth below, we affirm.
On appeal from a juvenile court's order finding deprivation, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. We neither weigh evidence nor determine the credibility of witnesses.
(Punctuation and footnote omitted.) In the Interest of J.L., 269 Ga.App. 226, 603 S.E.2d 742 (2004).
So viewed, the record reflects that in March 2004, the Baldwin County Department of Family and Children Services ("DFCS") opened a child protective services case with the biological parents of K.W. and J.W. in order to investigate allegations of medical negligence. After DFCS determined that one of the children was suffering from a rash that needed medical treatment, the father agreed to cooperate and entered into a voluntary safety plan, which included a requirement that the children receive appropriate medical care and that all of their basic needs be met.
At the time Baldwin County DFCS created the safety plan, the parents had separated and the mother was not living in the home with her children. DFCS thereafter learned that the children were visiting the home of their mother and her boyfriend. The DFCS case manager spoke with the mother, who requested that DFCS perform a home evaluation of her residence so that DFCS would not have any concerns about the children visiting her. As a result, the case manager requested that, among other things, the mother and her boyfriend submit to drug screens, which were a component of a complete home evaluation. The mother and her boyfriend refused to submit to the drug screens, and the home evaluation was never completed. However, the mother later admitted to the case manager that she had been using methamphetamine that spring.
At the end of June 2004, the mother moved back into the home of her husband and children. Baldwin County DFCS remained involved and attempted to assist the mother and father in obtaining marital counseling and stabilizing their relationship. Nevertheless, the mother and father separated and reunited several times during the month of July 2004.
In August 2004, the mother moved to Cherokee County. Subsequently, in October 2004, the mother took K.W. and J.W. to live with her and her boyfriend in the Cherokee County residence.
The child protective services case was transferred to Cherokee County. On November 18, 2004, a Cherokee County DFCS case manager made an unannounced visit to the mother's residence. The mother and her boyfriend agreed to take drug screens. The case manager returned to the mother's residence on November 22 with the drug screen results.[2] During the visit, the mother admitted that she had used methamphetamine twice since she had taken the drug screen.
On November 30, 2004, K.W. and J.W. were taken into emergency shelter care. *112 Cherokee County DFCS filed its deprivation petition on December 1, 2004, alleging that the children were deprived because their mother had an unresolved methamphetamine abuse problem and the parents had failed to provide the children with safe and stable housing. At the deprivation hearing, the juvenile court heard from the case managers who handled the case in Baldwin County and Cherokee County and from the children's father. The mother failed to attend the hearing, although her attorney was present.
On March 18, 2005, the juvenile court entered an order holding that K.W. and J.W. were deprived under OCGA § 15-11-2(8)(A). The juvenile court found that the deprivation resulted from the mother's methamphetamine problem and the instability caused by the marital discord between the mother and father. The juvenile court further found that the children were deprived because the father had allowed the children to reside with the mother despite his knowledge of her substance abuse problem. Based upon these findings, the juvenile court ordered DFCS to complete a case plan for the mother requiring her, among other things, to obtain a substance abuse assessment and to complete any recommended follow-up treatment, submit to random drug screens, and attend parenting classes. Finally, the juvenile court ordered that custody of the children be returned to the father, subject to a 12-month protective order forbidding unsupervised contact between the mother and children.
The mother now appeals from the deprivation order, contending that there was insufficient evidence to support a finding that K.W. and J.W. were deprived while they were living with her and her boyfriend in Cherokee County. We disagree. Clear and convincing evidence supported a finding of deprivation based upon the mother's chronic methamphetamine problem.[3]
Under OCGA § 15-11-2(8)(A), a child is deprived if he or she "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."
In determining whether a child is without proper parental care or control, the trial court may consider, among other things, "[e]xcessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child."
(Footnote omitted.) In the Interest of J.C., 264 Ga.App. 598, 601(2), 591 S.E.2d 475 (2003), quoting OCGA § 15-11-94(b)(4)(B)(ii). Furthermore, although the general rule is that DFCS must present specific evidence showing how a parent's alleged improper conduct adversely affects his or her children,[4] a juvenile court is entitled to infer an adverse effect on the children when there is evidence of chronic alcohol or drug abuse by the parent. See In the Interest of J.L., 269 Ga.App. at 229(1), 603 S.E.2d 742. Compare In the Interest of A.J.I., 277 Ga.App. 226, 229-230, 626 S.E.2d 195 (2006) (evidence of isolated, occasional drug use by parent not enough to create inference of adverse effect on children).
Construing the evidence in the light most favorable to the juvenile court's judgment, we conclude that there was evidence of chronic illegal methamphetamine use by the mother. The mother admitted that she was using methamphetamine in the spring of 2004, during a pending child protective services investigation by Baldwin County DFCS and at a time when she had refused to take a requested drug screen. Thereafter, despite the ongoing DFCS investigation of which she was aware, the mother did not cease using the drug. Instead, the mother admitted to using methamphetamine twice in a four-day period in November 2004, only a short period after her children had come to live with her *113 and her boyfriend. The juvenile court was entitled to infer from the mother's continued use of methamphetamineeven when K.W. and J.W. had only recently come into her care, DFCS was actively investigating the situation, and she had already agreed to a drug screenthat the mother was suffering from a chronic substance abuse problem that she could not easily control or overcome.
Because the juvenile court was entitled to find that the mother had a chronic methamphetamine problem, the juvenile court was entitled to infer that the mother's drug use adversely affected her minor children. In the Interest of J.L., 269 Ga.App. at 229(1), 603 S.E.2d 742. This inference was particularly warranted here, where the mother's drug of choice was methamphetamine, a Schedule II controlled substance[5] involving dangers to adults and children that have been well documented. See, e.g., Sharon G. Elstein, Children Exposed to Parental Substance Abuse: The Impact, 34 Colo. Law. 29, 32 (2005) (children exposed to methamphetamine use are at increased risk of victimization because the drug increases "paranoia and rage"); Zachary R. Gates, Obeying the "Speed" Limit: Framing the Appropriate Role of EPA Criminal Enforcement Actions Against Clandestine Drug Laboratory Operators, 13 Penn. St. Envtl. L.Rev. 173, 175-176 (2005) (long-term methamphetamine use is associated with "violent behavior, confusion, and insomnia, ... auditory hallucinations (`the voices'), mood swings, and delusions or paranoia") (footnote omitted).
Indeed, the severe socioeconomic and public health problems arising from methamphetamine use and addiction have been of particular concern to Georgia legislators. The General Assembly recently passed legislation allowing only behind-the-counter sales of certain pharmaceuticals from which methamphetamine can be made and limiting the amount of such pharmaceuticals that can be possessed for personal use. See OCGA § 16-13-30.3(b.1)(1), (2).
Under these circumstances, we affirm the juvenile court's deprivation order. The juvenile court did not err in finding K.W. and J.W. deprived pursuant to OCGA § 15-11-2(8)(A).
Judgment affirmed.
ANDREWS, P.J., and BARNES, J., concur.
NOTES
[1] The biological father has not appealed from the deprivation order, which provided him with legal and physical custody of the children, subject to a 12-month protective order.
[2] DFCS attempted to have the case manager testify as to what she told the mother about the results of the drug screen, but the juvenile court sustained objections to the testimony on the grounds that the testimony was hearsay and lacked a proper foundation. "The evidence required to support a finding of deprivation must be not only clear and convincing, but also competent." (Footnote omitted.) In the Interest of E.C., 271 Ga.App. 133, 135(1), 609 S.E.2d 381 (2004). See also In the Interest of C.D.E., 248 Ga.App. 756, 764(2), 546 S.E.2d 837 (2001). The juvenile court properly sustained the objection. See In the Interest of C.N.S., 248 Ga.App. 84, 87, 545 S.E.2d 633 (2001). Following the objection, DFCS made no effort to establish a chain of custody with respect to the drug screen results and chose not to call any witnesses, such as the testing toxicologist, directly involved in conducting the drug screen. Thus, DFCS failed to present any competent evidence of the drug screen results, and we do not rely on those results in rendering our opinion.
[3] Based on this conclusion, we need not reach the separate issue of whether the juvenile court properly found that the children were deprived as a result of the marital discord between the mother and father.
[4] See, e.g., In the Interest of D.S., 217 Ga.App. 29, 31(1), 456 S.E.2d 715 (1995).
[5] See OCGA §§ 16-13-24(b)(2) (defining "Schedule II" controlled substances); 16-13-26(3)(B) (listing methamphetamine as Schedule II controlled substance).