A04A1572. IN THE INTEREST OF J. L., a child.

(603 SE2d 742)

MIKELL, Judge.

L. D., the biological mother of 22-month-old J. L., appeals the juvenile court's order finding the child deprived and awarding temporary custody to the Irwin County Department of Family and Children Services (the "Department"). We affirm.

> On appeal from a juvenile court's order finding deprivation, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the [child was] deprived. We neither weigh evidence nor determine the credibility of witnesses.[1]

So viewed, the evidence shows that on September 18, 2003, the Department investigated a report that appellant, a single mother, was abusing drugs and alcohol. The Department established a safety plan, which appellant twice refused to sign. On September 19, 2003, the Department obtained emergency custody of J. L., then 13 months old, and placed him in foster care. Following a shelter care hearing on September 22, 2003, the juvenile court found J. L. deprived, but returned him to appellant after she agreed to a second safety plan established by the Department. The second safety plan required appellant to submit to a formal substance abuse assessment; to participate in substance abuse therapy and treatment if appropriate; to provide responsible adult supervision for J. L. at all times; to provide a safe drug-free environment; to provide for J. L.'s basic needs; to submit to random drug testing; and to cooperate with the Department and notify them if she moved.

Beth Underwood, a Department case manager, testified that appellant submitted to a substance abuse assessment on October 10, 2003, and underwent drug screening at Irwin County Hospital on October 20, 2003, and November 3, 2003. The first drug screen was positive for marijuana, and the second was positive for marijuana and cocaine. Appellant was referred to the New Focus Center for Women at Behavioral Health Service ("New Focus") for substance abuse therapy and began treatment on November 4, 2003. The Department also encouraged appellant to attend parenting classes, which she refused.

---

[1] (Punctuation and footnotes omitted.) *In the Interest of G. G.*, 253 Ga. App. 565 (560 SE2d 69) (2002). See also *In the Interest of C. F.*, 266 Ga. App. 325, 326 (1) (596 SE2d 781) (2004).

Roscoe Edwards, director of New Focus, testified that he performed appellant's initial intake evaluation and that appellant admitted that she suffered from depression but denied that she had a substance abuse problem. A staff physician diagnosed appellant with depression and prescribed anti-depressants. One week into the program, appellant admitted to Edwards that she had a drug problem. According to Edwards, appellant attended New Focus's drug treatment program until December 4, 2003, but failed to complete the program. Edwards described the program as an intensive outpatient program consisting of regular daily attendance for a minimum of ninety days; appellant attended only ten days over a thirty-day period before quitting on December 5, 2003. During this period, appellant was given five random drug screens, all of which came back positive for marijuana and/or cocaine.

On December 4, 2003, Underwood went to appellant's home to discuss her positive drug screens, her lack of attendance at New Focus, her failure to attend parenting classes, and the need to comply with her safety plan. Appellant was argumentative and demanded several times that Underwood leave her home. Because appellant continued to abuse drugs and failed to comply with the second safety plan, the Department filed a complaint on December 5, 2003, seeking an emergency order returning custody of J. L. to the Department. On that same day, the juvenile court awarded emergency custody of J. L. to the Department. According to Edwards, appellant called him that day and said "if I don't have my child, I'm not coming back [to New Focus]." On December 14, appellant again told Edwards that there was no point in returning to New Focus.

Mindy Jones, a family service worker for the Department, testified that appellant never attended parenting classes, stating that she did not need them. Jones also testified that appellant occasionally became hostile and on one occasion refused to accompany Jones to visit J. L. Jones also offered to drive appellant to her drug screens, but appellant refused.

Cassandra Tolbert, appellant's cousin, testified that she and appellant smoked marijuana together.

Steve Butler, a placement care worker for the Department, described appellant as "one of the most hostile clients [he's] ever worked with." Butler testified that appellant refused to sign the case plan presented to her by Underwood in December 2003, and did not attend a meeting on January 15, 2004, to discuss the 30-day case plan developed by Butler. At a visit on December 30, 2003, appellant told Butler to "get the hell out of her yard" and argued with him about transportation to New Focus and visits with J. L. Appellant told Butler that she stopped going to New Focus because the courtesy van stopped picking her up. After verifying that the van was coming to

appellant's home, Butler urged appellant to return to counseling. According to Butler, appellant also missed two of three scheduled visits with J. L. Butler further testified that appellant's other child is being raised by his maternal grandfather and that the Department plans to consider relative placement with J. L.'s biological father, maternal grandfather, and paternal grandmother.

Caroline Rich, a driver for Fair Transport, the bus service that provided transportation for appellant to New Focus, testified that on December 5, 2003, appellant told her that J. L. had been removed from her custody so she had no reason to go to New Focus. Rich testified that she continued to make trips out to appellant's home every weekday, and that on two occasions, appellant signed the trip log but refused transportation to New Focus. Subsequently, Rich would go to appellant's home, but appellant would not come to the door. Rich testified that this continued until January 26, 2004.

The Department filed a petition for temporary custody on January 15, 2004, alleging that appellant failed to attend drug treatment, tested positive for cocaine and marijuana, and admitted that she continues to use drugs, all of which affect her ability to properly care for J. L. A hearing on that petition was held on January 27, 2004. At the close of the Department's evidence, appellant moved for a directed verdict, arguing that there was no evidence that appellant's drug use has affected J. L. or resulted in his deprivation. The juvenile court denied appellant's motion and on February 18, 2004, entered an order finding J. L. deprived and awarding temporary custody to the Department. The court concluded that, "[t]he reason[s] [J. L.] cannot be adequately and safely protected at home are: [appellant's] continued substance abuse and [refusal] to attend substance abuse treatment." This appeal followed.

1. In two related enumerations, appellant challenges the sufficiency of the evidence, arguing that there is no clear and convincing evidence that J. L. is deprived. A deprived child is a child who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[2] "The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue."[3] Deprivation must be shown by clear and convincing evidence.[4]

---

[2] OCGA § 15-11-2 (8) (A).

[3] (Citations and punctuation omitted.) *In the Interest of D. E. K.*, 236 Ga. App. 574, 577 (512 SE2d 690) (1999).

[4] Id.

In determining whether a child is without proper parental care or control, the juvenile court may consider,

> [e]xcessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child.[5]

Even though there is no evidence of how appellant's drug use adversely affected J. L., there is clear and convincing evidence that appellant abused cocaine.[6] Viewing this evidence in the light most favorable to the juvenile court's judgment, it is a fair inference that use of cocaine by a parent has an adverse effect on a minor child. Accordingly, the juvenile court did not err in finding J. L. deprived and in awarding temporary custody to the Department.

2. Appellant contends that the juvenile court erred in basing its decision to award temporary custody solely on the fact that appellant violated the terms of the safety plan she was "coerced" to sign on September 22, 2003. Relying on *In the Interest of C. F.*,[7] appellant explains that since the juvenile court dismissed the original petition, it was without authority to impose restrictions on appellant.

Under OCGA § 15-11-54 (a),

> [a]fter hearing the evidence on any petition alleging deprivation, the court shall make and file its findings as to

---

[5] OCGA § 15-11-94 (b) (4) (B) (ii). See *In the Interest of J. C.*, 264 Ga. App. 598, 601 (2) (591 SE2d 475) (2003).

[6] See, e.g., *In the Interest of B. S.*, 265 Ga. App. 795 (595 SE2d 607) (2004) (evidence sufficient to show deprivation: mother had long history of unrehabilitated drug use; at time of child's birth, mother was incarcerated for violating probation for crimes of forgery and prostitution; mother's rights to six other children had been terminated; mother failed to complete drug rehabilitation program; and mother used cocaine while pregnant); *In the Interest of P. O. M.*, 255 Ga. App. 534, 535-536 (1) (566 SE2d 334) (2002) (evidence sufficient to show deprivation: mother had lengthy history of alcohol and drug abuse; mother failed to comply with DFCS plan to complete drug treatment, attend parenting classes and submit to psychological evaluation; mother was incarcerated at time of termination hearing; mother had been convicted of DUI, possession of marijuana and felony theft by receiving; and at the time of birth, both mother and child tested positive for cocaine). But see *In the Interest of M. L. C.*, 249 Ga. App. 435, 437-438 (2) (548 SE2d 137) (2001) (evidence insufficient to support finding that child was deprived: even though parents admitted to substance abuse, depression, and incidents of domestic violence, there was little evidence showing how that affected the child who was an honor roll student); *In the Interest of D. E. K.*, supra (mother's previous drug use and other behavior, while not condoned, were insufficient to show child was deprived); *In the Interest of D. S.*, 217 Ga. App. 29, 31 (1) (456 SE2d 715) (1995) (reversing juvenile court's finding of deprivation and award of temporary custody to the DFCS: even though evidence showed that family was living in filthy surroundings, it did not show how the environment adversely affected the children).

[7] Supra.

whether the child is a deprived child. If the court finds that the child is not a deprived child, it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding.[8]

Further, pursuant to OCGA § 15-11-55 (a), "[i]f the child is found to be a deprived child, the court may . . . [p]ermit the child to remain with his . . . parents . . . subject to conditions and limitations as the court prescribes."

We reject appellant's contention that this case is similar to the situation in *In the Interest of C. F.*[9] In that case, the juvenile court dismissed the deprivation complaint, but placed visitation restrictions on the mother. Citing OCGA § 15-11-54 (a), we reversed that portion of the juvenile court's order imposing visitation restrictions, but affirmed the remainder of the judgment, finding that, "[s]ince the children were not found to be deprived, the court, in dismissing [the Department's] deprivation complaint in this action, was without authority to impose restrictions on visitation."[10] Here, by contrast, the record reflects that the Department filed its initial complaint on September 19, 2003, and that the juvenile court awarded to the Department emergency custody of J. L. based upon substance abuse by appellant, concern for J. L.'s safety, and appellant's refusal to submit to a substance abuse assessment and refusal to sign a safety plan. Following a shelter care hearing on September 22, 2003, the juvenile court found that J. L. was deprived at the time of the entry of the emergency order on September 19, 2003, but returned J. L. to appellant after finding that appellant was "willing to sign and comply with the Department's safety plan." Unlike *In the Interest of C. F.*, here the juvenile court did not dismiss the Department's initial complaint or find that J. L. was no longer deprived. Contrary to appellant's contention, the juvenile court was not without authority to impose restrictions on appellant pursuant to OCGA § 15-11-55 (a).

3. Lastly, appellant contends that since she objected to the entry of the 30-day case plan, the juvenile court erred in approving the plan without a hearing. This contention is without merit.

OCGA § 15-11-58 (b) provides, in pertinent part, that,

[w]ithin 30 days of the date a child who is placed in the custody of [the Department] is removed from the home and at

---

[8] Id. at 328 (2).
[9] Id.
[10] Id. at 328 (2).

each subsequent review of the disposition order, [the Department] must submit a written report to the court which shall either include a case plan for a reunification of the family or include a statement of the factual basis or bases for determining that a plan for reunification is not appropriate.

OCGA § 15-11-58 (d) further provides that,

[i]f the report contains a plan for reunification services, a copy of the report must be transmitted to the parents at the same time the report is transmitted to the court, along with written notice that the report will be considered by the court without a hearing unless, within five days from the date the copy of the report was received, the parents request a hearing before the court to review the report.

The record reflects that during the deprivation hearing, appellant's attorney stipulated that appellant received and signed a copy of the case plan on January 24, 2004. After it was established that appellant knew that she had five days to object to the case plan, the following exchange took place:

The Court: Well if [appellant] objects and wishes to have an additional hearing as to the goals set forth in the case plan since [J. L.] will remain in care, you can set that with my office or can you attempt to meet with [the Department and its attorney] if you chose to do so or we can have a hearing. Appellant's Counsel: [I]f we can get a stipulation on that extension for that five days, I'd rather talk to [the Department's attorney] about it, maybe we can reach some agreement.
The Court: Well, you've made an objection and I will consider that noted within the five days. If ya'll don't reach an agreement, it goes on our next calendar for a hearing if she still objects. Does that make sense? And, [the Department's attorney], if you tell me you don't want to meet with [appellant's counsel] or anybody about it, then we'll just set it for a hearing.
The Department's Attorney: Well, it's not with me, I mean, it's the Department. You know, they — I don't —
The Court: Do you all mind meeting with [appellant's counsel] about it or you want to have a hearing? Okay. If you still need a hearing, you let me know.

The juvenile court's order was entered on February 18, 2004, over 20 days from the date of the hearing. There is no evidence in the record that counsel could not reach an agreement on the case plan and no evidence that appellant formally objected to the case plan within the ten-day period stipulated for objecting. Accordingly, appellant was not entitled to a hearing and the juvenile court properly incorporated the case plan in its order.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 23, 2004.

*Render M. Heard, Jr.,* for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Shalen S. Nelson, Senior Assistant Attorneys General, Laura W. Hyman, Assistant Attorney General, Mixon & Mixon, Warren L. Mixon,* for appellee.