626 S.E.2d 195 (2006)
277 Ga. App. 226
In the Interest of A.J.I.
In the Interest of S.I.
Nos. A05A2242, A05A2243.
Court of Appeals of Georgia.
January 13, 2006.
Sean A. Black, Toccoa, for appellant.
*196 Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Deidra L. Schad, Assistant Attorneys General, for appellee.
ADAMS, Judge.
The mother of A.J.I. and S.I. appeals from the juvenile court's orders finding A.J.I. and S.I. to be deprived children and placing them in the temporary custody of the Franklin County Department of Family and Children Services (DFACS). The mother contends that the findings of deprivation were not supported by clear and convincing evidence. We agree and reverse.
Under OCGA § 15-11-2(8)(A), a deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."
That definition focuses upon the needs of the child regardless of parental fault.... To authorize even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. On appeal from a determination that a child is deprived, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. Parental unfitness must also be proved by clear and convincing evidence. This standard of review safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.
(Citations and punctuation omitted.) In the Interest of S.J., 270 Ga.App. 598, 599, 607 S.E.2d 225 (2004).
Although there is a paucity of evidence concerning the events surrounding DFACS's initial involvement with this family, it appears that DFACS first took custody of the children in late 2004, and then returned custody to the mother in January 2005. Apparently the children were returned to the mother under the terms of a protective order, but that order does not appear in the record.
The State again took custody of the children under an emergency order on April 27, 2005. The State filed a deprivation petition on May 3, 2005. In the petition the State alleged that the mother had failed to abide by the terms of the protective order, had continued to use marijuana and had failed to cooperate with DFACS. The complaint also alleged that A.J.I. had missed numerous days of the Head Start program in which she was enrolled.
The juvenile court conducted a hearing on the petition on May 12, 2005. At the hearing, testimony was presented that the protective order required the mother to have A.J.I. evaluated by a therapist and the mother's attorney stipulated that A.J.I. had missed a scheduled appointment with the therapist.[1] The mother's attorney further stipulated that the appointment was missed because of transportation issues and that the appointment was not rescheduled in a timely manner because the mother did not have a telephone.
The record was somewhat unclear about the evidence concerning the allegations of continued drug use. Insofar as we can discern from the hearing transcript, the mother had been tested for drug use two or three times since the children had been returned to her, and one of those tests, conducted on March 11, 2005, indicated positive for drug (marijuana) use. As to the final allegation *197 that A.J.I. had missed numerous days of school, it was noted on the record that she was not of school age, so school attendance was not yet mandatory for her. Additionally, testimony at the 72-hour hearing established that A.J.I.'s school attendance was not mandated by the protective order.
Following the hearing, the juvenile court entered a "Provisional Order of Adjudication and Disposition" finding the children to be deprived and continuing custody in DFACS. The findings of deprivation were based on the mother's failure to comply with the protective order, the instability of the mother and the mother's substance abuse issues.
The mother first argues that the trial court erred by basing its finding of deprivation in part on her failure to comply with the protective order because that order was not entered into evidence at the deprivation hearing. Our review of the record and transcripts shows that the mother is correct in her assertion that the order was not introduced at the 72-hour hearing on April 28, 2005 or at the provisional hearing on May 12, 2005, and that it does not appear elsewhere in the record.[2] Indeed the mother's attorney at the 72-hour hearing noted her uncertainty about what was included in the protective order when she attempted to cross-examine the witnesses.
DFACS argues, however, that the failure to introduce the protective order into evidence at the hearings is harmless in light of the mother's admitted failure to abide by the terms of the order requiring her to take A.J.I. to a therapist for evaluation. It is true that the mother's attorney stipulated that she missed an appointment and failed to reschedule it in a timely fashion. But the hearing transcript also reflects that the stipulation was not without an explanationthat the mother's attorney stated that the child missed the appointment because the mother did not have transportation, and did not timely reschedule because she did not have a telephone.
The State argues that the mother also admitted that she had tested positive for drugs on one or two occasions after the children were returned to her. The mother argues, however, that there is no evidence that her occasional drug use resulted in her inability to care for her children or that it adversely affected the children. We agree. Although a DFACS caseworker testified that both children were in the home when she made an unannounced visit on March 18 to inform the mother of the positive drug screen results, there is no evidence that the caseworker observed any adverse living conditions or that the children were not being properly cared for at that time. And, according to the caseworker, the mother told her that the children were not with her at the time of the marijuana use. No conflicting evidence was offered, and there is nothing in the record before us to indicate that the mother used drugs around the children. And, perhaps most significantly, DFACS took no steps to remove the children from the mother's care at that time, and did not initiate proceedings to regain custody of the children until over a month after the March 2005 visit.
Likewise, DFACS points to evidence that at about this same time someone from the federal housing apartment complex where the mother and children lived made a report to DFACS that the younger child had been crying for long periods of time and that the mother had shouted at the child to "shut the hell up." The caller also reported that men were coming in and out of the mother's apartment at all hours through the day and night. The mother denied these allegations and DFACS apparently took no further action to investigate these allegations after it questioned the mother. There is no evidence that these reports were ever substantiated, or that DFACS received any other calls or *198 reports concerning either the mother's conduct in the home or the children's welfare while in her care between the time the reports were made in early March to when the children were removed in late April.
Moreover, although the State argues that the mother failed to cooperate with DFACS by undergoing additional drug screenings and assessments, the record does not clearly indicate that these were specifically required under the terms of the protective order.[3] Testimony was presented at the hearing that she had already undergone two alcohol and drug assessments, which indicated that she did not need any treatment for substance abuse. Apparently DFACS had decided to have the mother undergo another assessment, and then used the mother's failure to cooperate with having another assessment performed as a basis for again removing the children from her. But it is unclear to us how this was communicated to the mother or if the provisions in the protective order would have required her to undergo additional assessments at DFACS's discretion after the two earlier assessments indicated no substance abuse problems. And the mother testified at the deprivation hearing that she was working third shift and slept during the day, and did not realize the caseworker had been to her home until they came to take her children away the next day.[4]
Based on the foregoing, we conclude that the State failed to present clear and convincing evidence that the children were deprived. No evidence was presented that the mother's drug use had an adverse effect on the children, and there is no evidence to show the mother was such a chronic abuser of alcohol or drugs that such an effect can be inferred here. Accord In the Interest of M.L.C., 249 Ga.App. 435, 437-438(2), 548 S.E.2d 137 (2001). Although the mother did admit to the failure to take the older child to one scheduled therapist appointment and to failing to reschedule that appointment promptly, we cannot say that this failure warrants the drastic step of again removing the children from the mother.
The right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances. Our review of the record fails to unearth the clear and convincing proof that any rational trier of fact could have found that the mother had conducted herself in such a way as to abuse or neglect the [children] to the extent that her parental right to custody should be terminated.
(Citation and punctuation omitted.) In the Interest of T.L., 269 Ga.App. 842, 845-846, 605 S.E.2d 432 (2004) (reversing finding of deprivation when there was no evidence showing how child was negatively affected by "filthy" conditions in the home); In the Interest of M.L.C., 249 Ga.App. at 437-438, 548 S.E.2d 137 (evidence insufficient to support finding of deprivation even though parents admitted to substance abuse, depression and incidents of domestic violence since there was little evidence showing adverse effect on child); In the Interest of D.S., 217 Ga.App. 29, 31(1), 456 S.E.2d 715 (1995) (reversing juvenile court's finding of deprivation even though family lived in filthy conditions; evidence did not show living conditions adversely affected the children). The evidence was insufficient to show by clear and convincing evidence that the children were deprived. We therefore reverse the juvenile court's finding that the mother's right to custody of her children has been lost.
Judgments reversed.
SMITH, P.J., and ELLINGTON, J., concur.
NOTES
[1] It appears that the mother kept two prior appointments with the therapist, one in which she alone talked to the therapist in order to provide a history of the child, and another where both she and the child met with the therapist to help the child become comfortable talking with the therapist. The mother then failed to take A.J.I. to the next scheduled appointment.
[2] The sparseness of the record here insofar as documentary evidence relating to the home visits and drug screen tests results as well as the above mentioned protective order is bothersome to us especially in light of the seriousness of the removal of a child from his or her parent. In the Interest of T.L., 269 Ga.App. 842, 845, 605 S.E.2d 432 (2004). In this regard we would strongly caution the parties in these types of proceedings that although the chronology and the nature of events may be clear to the witnesses, and others involved in the lower court proceedings, including the presiding judge, without the development of a full and complete record, this Court is greatly hampered in its consideration of the issues presented.
[3] The record does show that the mother stated to one DFACS worker that she did not realize she had to continue to be tested for drug use. From what we can glean from the hearing transcripts, it appears that the only specific requirement in the protective order was that the older child participate in counseling for the duration ultimately recommended by the therapist after the evaluation was complete. It appears that there was also a general requirement that the mother cooperate with DFACS.
[4] The children were cared for by a family friend during the week while the mother was at work and during the part of the day she slept after she returned from her job.