**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 3, 2018**

# In the Court of Appeals of Georgia

A18A0949. IN THE INTEREST OF G. M. et al., CHILDREN
(MOTHER).

DILLARD, Chief Judge.

The mother of G. M. and N. M., two minor children, appeals the juvenile court's order finding her children to be dependent and granting temporary custody to the Lowndes County Division of Family and Children Services ("DFCS"). In doing so, the mother contends that DFCS failed to present clear and convincing evidence that her children were dependent. For the reasons set forth *infra*, we reverse.

G. M. was born in September 2013, and N. M. was born in October 2015. At N. M.'s birth, the mother tested positive for opiates and admitted to using opiates while pregnant. As a result of the mother's drug use, N. M. showed signs of opiate withdrawal when she was born, but she was successfully treated, and all her

symptoms resolved by the time she was one month old. Initially, DFCS did not remove the children from their mother's care. Instead, the mother was referred for a substance-abuse assessment. She complied with this directive, and, ultimately, went to outpatient therapy to address her drug dependence. Over the next several months, the mother was randomly drug tested. She had a positive drug test (for amphetamine) on December 4, 2015, but all of her other drug screens—including urine tests on November 28, 2015, December 18, 2015, and January 26, 2016, and a hair-follicle test on May 4, 2016—were negative. The negative hair-follicle screen was indicative of the mother not using illegal drugs for the three to six months prior to the test.

But on May 6, 2016, the mother's therapist arrived for an appointment and observed that she was under the influence. The mother admitted that she had taken two Soma pills, and the therapist contacted the DFCS caseworker, who came to the home and removed the children. Ultimately, the children were placed in foster care. Approximately one month later, DFCS filed a complaint, alleging that the mother was an admitted drug addict, who had not worked her case plan[1] or made any progress

---

[1] Although the complaint references a case plan and the notice of appeal asked the clerk not to omit anything from the appellate record, it does not appear in the record. Indeed, the only case plans in the record were entered after the instant dependency order. We remind the parties that "although the chronology and the nature of events may be clear to the witnesses, and others involved in the lower court

toward resolving her addiction. As a result, DFCS sought a finding of dependency and custody of the children. The juvenile court entered a preliminary protective order pending a hearing, which was later held on July 12, 2016.

At the hearing, the DFCS case manager testified that, despite the mother's negative drug screens, she was continuing to use opiates throughout DFCS's involvement with the family. Specifically, the caseworker testified the mother admitted to her and the therapist that she was continuing to use drugs. But the therapist testified that between January and May 2016, the mother admitted only to using opiates on May 6. And although the mother admitted to using Soma without a prescription on May 6, she denied using drugs since then and testified that, with the help of therapy, she had stopped using drugs prior to May 6. The mother was prescribed opiates three years before the hearing and, since then, she had taken drugs on occasion without a prescription, self-medicating as a coping mechanism.

With regard to the incident on May 6, 2016, the therapist and the caseworker observed that the mother's speech was slurred, she moved slowly, and she was

proceedings, including the presiding judge, without the development of a full and complete record, this Court is greatly hampered in its consideration of the issues presented." *In the Interest of G. R. B.*, 330 Ga. App. 693, 696 n.6 (769 SE2d 119) (2015) (punctuation omitted); *accord In the Interest of A. J. I.*, 277 Ga. App. 226, 228 n.2 (626 SE2d 195) (2006).

irritable and unfocused. When the caseworker arrived at the mother's home, she was returning from a neighbor's house with N. M. and G. M. and admitted to being under the influence. At the hearing, the caseworker expressed concern that the mother could not provide proper supervision to the children while she was under the influence. But the caseworker conceded that the children were not abused nor left unsupervised, and they never went without food, clothing, shelter, or medical care. Indeed, the caseworker testified that she did not have any evidence the mother placed her children in harm's way on May 6, "but there are a lot of possibilities out there."

As for the mother's treatment, her therapist testified that she suffered from depression and was forthcoming about her substance abuse. The mother had not been required to enter an inpatient treatment program in her initial substance-abuse assessment, and it was undisputed that she was compliant with her outpatient therapy. The therapist nonetheless recommended inpatient treatment, which the mother expressed a willingness to try. Nevertheless, the mother failed to enroll in inpatient drug treatment prior to the hearing, despite a DFCS recommendation and referral.

Before the children were born, the mother was jailed as a result of shoplifting and credit-card fraud charges. And before N. M. was born, she was arrested, convicted, and placed on probation for driving under the influence of Soma. G. M.

was not with her at the time of her arrest. At the hearing, the caseworker testified that the mother had "been to jail like three times since we've had this case for violations of her probation[,]" but provided no dates or other details about the probation violations. In this regard, the mother admitted to being incarcerated twice for probation violations, although one time was in June 2016, after the children had been removed from her care.

The DFCS caseworker also testified to certain medical concerns. Specifically, she believed G. M. was suffering from tooth decay, which the mother had failed to address. Notably, however, the children's pediatrician testified that tooth decay is a common problem among young children, affecting some 40 percent of the population of South Georgia, and that it is hard to obtain a dental appointment for a child under the age of three through Medicaid. N. M. also suffered from unexplained seizures and, according to the caseworker, unusual eye movements. But the caseworker admitted that there was no evidence N. M.'s seizures or unusual eye movements were caused by anything within the mother's control. And the pediatrician explained that the mother obtained regular medical care for the children, including successful treatment for N. M.'s seizures, which appeared to be unrelated to her intra-uterine opiate exposure.

Following the hearing, the juvenile court entered an order, nunc pro tunc to July 12, 2016,[2] finding the children to be dependent based on the mother's abuse of opiates, awarding temporary custody to DFCS, and ordering the mother to enter an inpatient substance-abuse treatment program. Specifically, the juvenile court based its finding of dependency on the following facts: the mother tested positive for opiates at N. M.'s birth and, as a result of her drug use, N. M. experienced opiate withdrawal; the mother had a positive drug test in December 2015, was under the influence on May 6, 2016, and admitted using opiates without a prescription over the past three years; the mother was on probation based on a conviction for driving under the influence of a prescription medication and had been incarcerated on two occasions for probation violations since October 2015; the mother had not entered residential drug treatment; and G. M.'s teeth were noticeably decayed. This appeal follows.[3]

---

[2] The trial court entered its order in August 2016 nunc pro tunc to the July hearing, but the transcript was not made a part of the record on appeal until October 2017 and, as a result of this delay, the case was not docketed in this Court until December 2017.

[3] Neither G. M.'s father nor N. M.'s father was served with the complaint prior to the hearing, and neither is a party to this appeal. But since the juvenile court entered its dependency order, G. M.'s father has legitimated him and has been "actively participat[ing] in the case plan for reunification[.]"

In a single claim of error, the mother appeals from the juvenile court's determination that her children were dependent, contending that the court lacked clear and convincing evidence to support its finding of dependency. We agree.

We review the juvenile court's finding of dependency in the light most favorable to the juvenile court's judgment "to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent."[4] In doing so, we do not weigh the evidence or determine the credibility of witnesses;

---

[4] *In the Interest of S. C. S.*, 336 Ga. App. 236, 244 (784 SE2d 83) (2016). The Juvenile Code was "substantially revised in 2013." *In the Interest of M. F.*, 298 Ga. 138, 140 (1) n.4 (780 SE2d 291) (2015). Importantly, the former Juvenile Code "authorized a juvenile court to award custody to the Department of any minor child shown to be 'deprived.'" *In the Interest of S. C. S.*, 336 Ga. App. at 244 n.4. But the current Juvenile Code "uses the word 'dependent' in lieu of 'deprived[.]'" *Id.* In this case, DFCS filed its complaint on June 6, 2016, such that the new Juvenile Code applies. *See* OCGA § 15-11-16 (a) (3) (providing that a proceeding under the new Juvenile Code "may be commenced . . . by the filing of a complaint or a petition as provided in Article[ ] 3 . . . of [the new Juvenile Code]," which governs dependency proceedings); *In the Interest of M. F.*, 298 Ga. at 140 (1) n.4 (noting that the new Juvenile Code applies to proceedings commenced on or after January 1, 2014). Nonetheless, given the similarities between the definition of a "deprived child" and that of a "dependent child," we find that "our previous decisions addressing the deprivation of a child are relevant to appeals involving the dependency of a child." *In the Interest of S. C. S.*, 336 Ga. App. at 244 n.4.

7

"instead we defer to the juvenile court's findings of fact and affirm unless the appellate standard is not met."[5]

Notably, even a temporary loss of custody is not authorized unless there is clear and convincing evidence that the dependency "resulted from the unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child."[6] Thus, only under *compelling circumstances* that are found to exist by such *clear and convincing proof* may a court sever, even temporarily, the parent-child custodial relationship.[7] This is because "the right to the custody and control of one's child is a fiercely guarded right in our society and in our law."[8] Indeed, as our Supreme Court recently emphasized, the right of familial

---

[5] *In the Interest of A. J. H.*, 325 Ga. App. 848, 848 (755 SE2d 241) (2014); *accord In the Interest of B. M. B.*, 241 Ga. App. 609, 609 (527 SE2d 250) (1999).

[6] *In the Interest of A. J. H.*, 325 Ga. App. at 852 (punctuation omitted); *accord In the Interest of C. R.*, 292 Ga. App. 346, 351 (2) (665 SE2d 39) (2008).

[7] *In the Interest of A. J. H.*, 325 Ga. App. at 852; *accord In the Interest of H. S.*, 285 Ga. App. 839, 841 (648 SE2d 143) (2007); *In the Interest of A. J. I.*, 277 Ga. App. at 227; *In the Interest of S. J.*, 270 Ga. App. 598, 599 (607 SE2d 225) (2004).

[8] *In the Interest of H. S.*, 285 Ga. App. at 843-44; *accord In the Interest of A. J. I.*, 277 Ga. App. at 230.

relations is "among the inherent rights that are derived from the law of nature."[9] And because of the sacred right at stake in custody proceedings, generally, the record must contain evidence of present dependency, not merely past or potential future dependency.[10] Finally, the party who brings the petition alleging dependency, not the parent from whose custody the child is being removed, carries the burden of proof.[11]

Here, the juvenile court found the children dependent, as defined by OCGA § 15-11-2 (22), in that they had been abused or neglected.[12] "Neglect" is defined as, *inter alia*, "[t]he failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals; [or] . . . [t]he failure to provide a child with

---

[9] *Patten v. Ardis*, 304 Ga. 140, 141 (2) (816 SE2d 633) (2018); *accord Sloan v. Jones*, 130 Ga. 836, 847 (62 SE 21) (1908); *Moore v. Dozier*, 128 Ga. 90, 93-94 (57 SE 110) (1907); *see generally In the Interest of R. B.*, 346 Ga. App. 564, 571-76 (816 SE2d 706) (2018) (Dillard, C.J., concurring fully and specially).

[10] *In the Interest of A. J. H.*, 325 Ga. App. at 852; *accord In the Interest of R. S. T.*, 323 Ga. App. 860, 863 (748 SE2d 498) (2013).

[11] *In the Interest of T. P.*, 291 Ga. App. 83, 85-6 (3) (661 SE2d 211) (2008); *see* OCGA § 15-11-180 ("The petitioner shall have the burden of proving the allegations of a dependency petition by clear and convincing evidence.").

[12] *See* OCGA § 15-11-2 (22) (A) (defining a "dependent child" as "a child who . . . [h]as been abused or neglected and is in need of the protection of the court").

adequate supervision necessary for such child's well-being[.]"[13] And "abuse" is defined as "[a]ny nonaccidental physical injury . . .; [e]motional abuse; [s]exual abuse or sexual exploitation; [p]renatal abuse; or [t]he commission of an act of family violence . . . in the presence of a child."[14]

Although a juvenile court may consider prior unrehabilitated substance abuse to infer harm to a child even when there is no showing of actual harm,[15] the evidence established that the mother had passed all but one of her drug screens since November 2015, she was forthcoming and compliant in her outpatient treatment, and she was willing to enter inpatient treatment, even though she had not been required to do so by court order prior to the instant dependency order or by her initial substance-abuse assessment. And while the mother was under the influence on May 6, 2016, she

---

[13] OCGA § 15-11-2 (48).

[14] OCGA § 15-11-2 (2).

[15] *See* OCGA § 15-11-311 (a) (2) (providing that, in determining whether a child is without proper parental care or control, the juvenile court may consider, *inter alia*, "[e]xcessive use of or history of chronic unrehabilitated substance abuse with the effect of rendering a parent of such child incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of his or her child"); *In the Interest of K. W.*, 279 Ga. App. 319, 321 (631 SE2d 110) (2006) ("[A] juvenile court is entitled to infer an adverse effect on the children when there is evidence of chronic alcohol or drug abuse by the parent.").

10

admitted the relapse to her therapist and the DFCS caseworker, and there was no clear

and convincing evidence that the children were placed in harm's way as a result of

her intoxication that day.[16]

_____

[16] *Compare In the Interest of G. R. B.*, 330 Ga. App. at 701-02 (reversing finding of deprivation when, although parents admitted to incidents of domestic violence in front of child and father "admitted to previously using methamphetamine daily for five years," the evidence established that father had passed several drug screens, he was willing to undergo random drug tests, and he was partway through a nine-month substance abuse program); *In the Interest of A. J. I.*, 277 Ga. App. at 229-30 (reversing deprivation finding when, although mother tested positive for drugs once or twice when the children were in her custody, there was no evidence that "her occasional drug use resulted in her inability to care for her children or that it adversely affected the children" and there was no evidence that the mother used drugs around the children); *In the Interest of M. L. C.*, 249 Ga. App. 435, 438-39 (548 SE2d 137) (2001) (reversing finding of deprivation when, although father admitted to previous addiction to marijuana, he had used only once in the preceding ten months and had passed all but one of his monthly drug tests), *with In the Interest of C. R.*, 292 Ga. App. 346, 349-50 (1) (a) (665 SE2d 39) (2008) (affirming finding of deprivation when "mother used cocaine both before and after the birth of [the child]. . . and often left [the child] in the care of others when she went to use drugs"); *In the Interest of K. W.*, 279 Ga. App. at 322-23 (affirming finding of deprivation and holding that it was fair to infer harm to child from mother's chronic abuse of methamphetamine when, despite ongoing DFCS investigation into her addiction, mother did not cease using the drug); *In the Interest of J. L.*, 269 Ga. App. 226, 227-29 (1) (603 SE2d 742) (2004) (affirming finding of deprivation and holding that it was fair to infer that mother's chronic abuse of illegal drugs would have an adverse effect on child when she had failed repeated drug tests despite enrollment in treatment, refused to complete treatment, was hostile toward DFCS workers, and admitted to continued use of illegal drugs). *But cf. In the Interest of A. S.*, 339 Ga. App. 875, 880 (2) (794 SE2d 672) (2016) (affirming finding that children's dependency was likely to continue and would not likely be remedied when there was evidence that mother and her youngest child tested positive for cocaine and marijuana at the child's birth, mother "continued

11

Furthermore, the evidence was undisputed that G. M. was not with the mother when she was arrested for driving under the influence and that her other criminal convictions occurred *prior to* the children's births. As for her probation violations, although she was jailed twice for probation violations, one violation occurred *after* the children were taken out of her care, and DFCS failed to present any evidence as to the dates or lengths of any incarcerations. Thus, DFCS failed to present clear and convincing evidence that these probation violations resulted in abuse or neglect of the children.[17]

Finally, as to G. M.'s tooth decay, the evidence was not clear and convincing that the tooth decay was the mother's fault or that it was causing G. M. any pain or

_____

testing positive for cocaine and marijuana, as well as oxycodone" afterwards and, following a period of treatment and negative screens, mother tested positive for benzodiazepines, failed to complete substance abuse counseling, and refused "drug screens despite being advised the refusal would be treated as a positive screen by DFCS").

[17] *Cf. In Interest of E. G. L. B.*, 342 Ga. App. 839, 846 (1) (805 SE2d 285) (2017) ("[I]mprisonment alone does not automatically authorize a termination of parental rights premised upon parental unfitness; there must be circumstances in aggravation." (punctuation omitted)); *In the Interest of T. Z. L.*, 325 Ga. App. 84, 95, 98-99 (1) (a) (751 SE2d 854) (2013) (reversing termination of father's rights when, although there was evidence of four prior convictions, two of the crimes were committed before the child's birth, only one involved a lengthy (four-year) period of incarceration, and there was no finding that the father was likely to continue to engage in criminal activity).

other ill effects. Rather, the undisputed evidence was that tooth decay was extremely common in young children and that it was very difficult to obtain treatment for same for a child G. M.'s age on Medicaid.[18]

Admittedly, the mother has a substance abuse problem, which resulted in N. M. suffering from withdrawal symptoms at birth. But since that time, the mother has been seeking treatment for her addiction, resulting in a five-month period of negative drug screens. Although she relapsed on May 6, 2016, on this record, we cannot say that there was clear and convincing evidence that the children were presently dependent as a result of her relapse, her legal problems, or G. M.'s tooth decay. Accordingly, we conclude that DFCS failed to establish sufficient evidence of the

---

[18] *Compare In the Interest of A. J. H.*, 325 Ga. App. at 852 (reversing finding of deprivation when, although mother failed to give child all of his prescribed medication, there was no evidence to counter her explanation that some were to be given only as needed or the dosages had been reduced, and there was no evidence that the child suffered any ill effects from inconsistent use of medication), *with In the Interest of D. N. B.*, 258 Ga. App. 481, 481-82 (574 SE2d 574) (2002) (affirming termination of parental rights when mother had a lengthy history of neglecting the child, including the fact that, at the time child was taken into DFCS custody, she "had five abscessed teeth and numerous other decayed teeth and urgently needed dental work[; h]er gums were swollen, infected, and bleeding, and the child had difficulty eating").

mother's unfitness, and we therefore reverse the juvenile court's finding of dependency and its subsequent award of temporary custody to DFCS.[19]

*Judgment reversed. Mercier, J., concurs. Doyle, P. J., dissents*.

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a)**

---

[19] *See In the Interest of G. R. B.*, 330 Ga. App. at 702 (reversing determination that child was deprived when record lacked clear and convincing evidence of harm to child); *In the Interest of A. J. I.*, 277 Ga. App. at 231 (same); *In the Interest of M. L. C.*, 249 Ga. App. at 439 (same).

A18A0949. IN THE INTEREST OF G. M. et al., CHILDREN (MOTHER).

DOYLE, Presiding Judge.

Respectfully, I dissent because there was sufficient evidence to support the trial court's finding of dependency.[1]

> On appeal from an order finding a child to be a dependent child, we review the juvenile court's finding of dependency in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent. In making this determination we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened.[2]

---

[1] To the extent that the record lacks documentation from the mother's case plan prior to the removal of the children in May 2016, we presume that the trial court's order is supported by evidence absent from the record. See *In the Interest of C. M. L.*, 260 Ga. App. 502, 504 (2) (580 SE2d 276) (2003).

[2] (Punctuation omitted.) *In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018).

Clear and convincing evidence is an intermediate standard of proof, greater than a preponderance of the evidence but less than proof beyond a reasonable doubt; under the clear and convincing evidence standard it is not necessary to make a showing of evidence that is unequivocal or undisputed.[3]

"Under the most recent version of Georgia's Juvenile Code, the juvenile court may place a minor child in the protective custody of the Department where the State shows, by clear and convincing evidence, that the child is a dependent child."[4] A "dependent child" has, inter alia, "been abused or neglected and is in need of the protection of the court."[5] "Neglect" is defined as "[t]he failure to provide proper parental care or control, subsistence, . . . or other control necessary for a child's physical, mental, or emotional health or morals;" or "[t]he failure to provide a child with adequate supervision necessary for such child's well-being."[6]

> In determining whether a child is without proper parental care or control, the trial court may consider, among other things, excessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or

---

[3] Cf. *Clarke v. Cotton*, 207 Ga. App. 883, 884-885 (2) (429 SE2d 291) (1993).

[4] *In the Interest of A. W.*, 340 Ga. App. 406, 411 (1) (797 SE2d 655) (2017).

[5] OCGA § 15-11-2 (22).

[6] OCGA § 15-11-2 (48) (A) & (B).

2

narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child.[7]

Moreover, this Court has held that a juvenile court may infer that chronic, unrehabilitated drug use has an adverse effect on a minor child "[e]ven though there is no evidence of how [a parent's] drug use adversely affects" a child.[8]

In this case, although there was disputed evidence of the mother's sobriety during the period between the time her infant tested positive for opiates at birth in October 2015 and the time the mother admitted to taking unprescribed opiates resulting in removal of the children in May 2016, there was clear and convincing

---

[7] (Punctuation omitted.) *In the Interest of J. C.*, 264 Ga. App. 598, 601 (2) (591 SE2d 475) (2003). See also *In the Interest of S. O. C.*, 332 Ga. App. 738, 743-744 (1) (774 SE2d 785) (2015) ("when there is clear and convincing evidence of such chronic unrehabilitated drug use, the juvenile court may infer an adverse impact on the child and find the child deprived"); *In the Interest of C. R.*, 292 Ga. App. 346, 350 (1) (a) (665 SE2d 39) (2008) (affirming finding of deprivation because "[c]lear and convincing evidence was presented . . . that the [parent] had a history of drug abuse which continued after [the child] was born and during the [parent's] care of [the child]").

[8] (Emphasis supplied.) See *In the Interest of J. L.*, 269 Ga. App. 226, 229 (1) (603 SE2d 742) (2004). Compare with *In the Interest of J. C.*, 264 Ga. App. at 601 (2) ("parents' admission of *isolated* drug use, considered alone, *may not* be clear and convincing evidence that they could not provide for the 'physical, mental, emotional, or moral condition and needs' of the child[]" but other evidence in addition to the parents' admission established deprivation) (emphasis supplied).

3

evidence on which the juvenile court could rely to support its finding that the children were dependent because of the mother's chronic, unrehabilitated drug use.

The record contains evidence that the mother had numerous negative drug screens;[9] however, the mother admitted to her case worker that she used unprescribed opiates between October 2015 and May 2016.[10] Additionally, her therapist testified that she observed the mother visibly intoxicated in May 2016 at their scheduled in-home appointment.[11] That evidence coupled with the mother's admission to using

---

[9] The mother had negative urine tests on November 18, 2015; December 18, 2015; January 26, 2016; and a negative hair follicle test on May 4, 2016 (two days before the admitted use). Although the hair follicle test may have covered much of the time frame between January 26, 2016, and May 4, 2016, the exact time frame which the test covered was not specifically indicated.

[10] The mother also provided equivocal testimony at the hearing regarding her use of opiates during that time period.

[11] The case worker testified that when the mother was under the influence she "was very irritable, not focused. She kind of moved kind of — her body movement was kind of like slow. I guess you could say a robotic type of movement." The case worker testified that the drug use could be a problem because she would not be as "alert as you need to be" or "give the reaction that you need to give" to children as young as G. M. and N. M. Compare with *In the Interest of A. J. I.*, 277 Ga. App. 226, 229 (626 SE2d 195) (2006) (reversing the termination of the mother's parental rights, noting that there was "no evidence that [the mother's] occasional drug use resulted in her inability to care for her children or that it adversely affected the children[;] . . . no evidence that the caseworker observed any adverse living conditions or that the children were not being properly cared for at that time . . .[; a]nd, according to the caseworker, *the mother told her that the children were not with her at the time of the marijuana use*.") (emphasis supplied).

4

opiates for three years prior to N. M.'s birth, her conviction for driving under the influence of opiates prior to N. M.'s birth, her use of opiates during her pregnancy with N. M. resulting in the child suffering withdrawal syndrome, her incarceration after the children were removed from her care in May, and another incarceration during the time period of October 2015 to May 2016, the juvenile court was authorized to find that the mother had an ongoing drug addiction,[12] which it could infer resulted in adverse effects on the children.[13]

---

[12] Compare with *In the Interest of A. W.*, 340 Ga. App. at 414-415 (1) (reversing a deprivation finding in which there was no evidence of the mother's continued use of narcotics after a single, though serious, domestic violence incident between the mother and father while the child was being cared for by a family member, and no evidence that the mother was a long-term user); *In the Interest of G. R. B.*, 330 Ga. App. 693, 700-701 (769 SE2d 119) (2015) (reversing because although there was admission of past drug use by the father, there was no evidence of concurrent drug use during the dependency case);

[13] See *In the Interest of N. H.*, 297 Ga. App. 344, 345-346 (1) (677 SE2d 399) (2009); *In the Interest of C. R.*, 292 Ga. App. at 350 (1) (a); *In the Interest of K. W.*, 279 Ga. App. 319, 322-323 (631 SE2d 110) (2006); *In the Interest of J. L.*, 269 Ga. App. at 229 n.6 (collecting cases). In addition to the testimony regarding the mother's drug use, there was some evidence that she had misused her food stamps in April 2016, which would have affected her capacity to provide for the children, as well as some evidence that G. M. may have tooth decay. Moreover, because the children were very young at the time of the proceedings, it is unlikely that they could testify regarding any adverse effects or lack thereof caused by the mother's drug use.

Based on these facts and the standard of review, I would affirm the juvenile court's finding of dependency.