**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 6, 2023**

# In the Court of Appeals of Georgia

A22A1262, A22A1263. IN THE INTEREST OF S. M., a child.

GOBEIL, Judge.

The parents of S. M. appeal the order finding their child to be a dependent child and awarding temporary custody to the Bartow County Department of Family and Children Services ("the department"). Because we believe the evidence supports the juvenile court's order, we affirm.

"On appeal from an order finding a child to be a dependent child, we review the juvenile court's finding of dependency in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent." *In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018) (citation and punctuation omitted). "[W]e neither weigh the evidence nor judge the credibility of the witnesses, but

instead defer to the factual findings made by the juvenile court, bearing in mind that it must consider and protect the welfare of a child whose well-being is threatened." *In the Interest of L. K.*, 353 Ga. App. 855, 858 (840 SE2d 76) (2020) (citations and punctuation omitted).

So viewed, the record shows that the parents have a history of methamphetamine use and previously were subject to the juvenile court's supervision through a dependency proceeding in 2019. Although the record contains limited information about the previous dependency proceeding, the parents successfully participated in a family treatment court program for two years. They graduated from the program in the summer of 2021 and completed the court's aftercare program in mid-October 2021.

About two months later, on December 23, 2021, the family again came to the attention of the department when the mother was arrested for fighting with the maternal grandmother in the family home and in the presence of the child; the father was at work at the time. The department alleged that the altercation was based on the grandmother's discovery of drug paraphernalia in the mother's home, but the mother denied such allegation. The department filed a dependency petition, alleging that the

parents had admitted to using methamphetamine one time since they completed the court treatment program.

At the hearing on the petition, the parents admitted smoking marijuana three to four times a week since leaving the aftercare program. They also admitted to a one-time relapse of methamphetamine use. Specifically, the mother testified that she had used methamphetamine at "[t]he end of November, first of December," and the father testified that he had used methamphetamine "around late November, early December." But the department's case manager testified that on December 24, the day after the mother's arrest, both the mother and the father said that they had used methamphetamine within the past week. The case manager also believed that the mother was not sober when they spoke at the jail on December 24. The parents had been drug screened at least once since then, and that drug screen was negative.

The juvenile court found that the parents' testimony about using methamphetamine a single time was not credible; that the case manager's testimony was credible; and that the parents regularly used methamphetamine in November and December 2021. The court found that the parents began regularly using methamphetamine only a short time after completing the family treatment court aftercare program and that they have a chronic, unrehabilitated substance abuse issue

3

involving methamphetamine that has been exacerbated by their regular use of marijuana.

The court held that although the parents can otherwise provide a stable environment for the child and the department presented no evidence that the child had suffered any actual harm from the parents' drug use, it would infer that the parents' chronic, unrehabilitated abuse of methamphetamine had adversely affected the child. He also found that the parents' use of methamphetamine likely would persist if they were not subject to the department's and the court's supervision.

The court concluded that the child is dependent due to neglect caused by the parents' unrehabilitated, chronic abuse of methamphetamine and that the parents are unfit because of their history of methamphetamine use and their current use of methamphetamine and marijuana. So the court awarded the department temporary legal custody of the child, pending a disposition hearing. The parents filed these appeals, which we consider together.

The parents argue that the evidence does not support the juvenile court's finding of chronic use of methamphetamine, and there was no evidence of actual harm to the child, so the juvenile court erred by inferring harm and awarding the department temporary custody. We disagree.

4

Our Juvenile Code provides that a juvenile court

> may place a minor child in the protective custody of the [d]epartment where the petitioner shows, by clear and convincing evidence, that the child is a "dependent child." As relevant here, the Juvenile Code defines a "dependent child" to include one who "has been abused or neglected and is in need of the protection of the court." Neglect occurs when a child is without proper parental care or control, subsistence, education or parental supervision.

*In the Interest of M. C.*, __ Ga. App. __, __ (1) (878 SE2d 625) (Case No. A22A0655, decided Sep. 20, 2022) (citations and punctuation omitted). Relevant to the case at hand,

> a factor to be considered in determining whether a child is without "proper parental care and control" is a parent's "[e]xcessive use of or history of chronic unrehabilitated substance abuse with the effect of rendering a parent of such child incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of his or her child." OCGA § 15-11-311 (a) (2).

*In the Interest of E. G. M.*, 341 Ga. App. 33, 54 (4) (798 SE2d 639) (2017) (punctuation omitted), overruled in part on other grounds by *In the Interest of I. L. M.*, 304 Ga. 114 (816 SE2d 620) (2018). Where there is evidence that a parent abuses drugs, "it is a fair inference that the use of [such drugs] by a parent has an adverse

5

effect on a minor child." *In the Interest of J. L.*, 269 Ga. App. 226, 229 (1) (603 SE2d 742) (2004).

Here, after finding both the mother and the father to be uncredible witnesses, the juvenile court found that "the parents regularly used methamphetamine in November and December 2021, only a short time after completing the Family Treatment Court after-care program." These findings have support in the record, because there was testimony from the department's case manager that the father gave more than one (inconsistent) explanation for when he and the mother had used methamphetamine; the mother stated that she had used only one time in late November/early December but told the case manager on December 24 that she had used a week ago; and the case manager observed that the mother appeared not sober while in custody on December 24.

Although the parents' methamphetamine use in November and December 2021 spanned only two months, combined with their history of methamphetamine use from before the family treatment program and the speed at which they relapsed after the program ended, and giving deference to the juvenile court's ability to assess the credibility of the witnesses, the evidence as a whole supports the trial court's finding that their substance abuse problem was "chronic" and "unrehabilitated" and thus

6

worthy of inferring harm to the child. Compare *In the Interest of J. L.*, 269 Ga. App. at 229 (1) (mother's use of cocaine and marijuana and unsuccessful attempt to complete substance abuse program supported trial court's inference that mother's chronic substance abuse harmed the child), and *In the Interest of K. W.*, 279 Ga. App. 319, 321-322 (631 SE2d 110) (2006) (mother's regular use of methamphetamine in the past and recent, potentially isolated, use of methamphetamine after her children had come back into her care was sufficient to support juvenile court's finding of chronic substance abuse), with *In the Interest of A. W.*, 340 Ga. App. 406, 414 (1) (b) (797 SE2d 655) (2017) (mother's use of methamphetamine over a six-week time period was not sufficient to find chronic substance abuse; however, evidence showed mother "never used the substance prior to that time frame, and she had ceased using the substance after her arrest"), and *In the Interest of C. G.*, 324 Ga. App. 110, 116 (749 SE2d 411) (2013) (where only evidence of mother's drug use was one failed drug test, one prior criminal conviction for drug use, and a suggestion in the mother's testimony that she had used drugs several years prior to the dependency hearing, evidence was not sufficient to support juvenile court's finding of chronic substance abuse).

Accordingly, we affirm the juvenile court's order finding the child to be a dependent child and awarding temporary custody to the department.

*Judgment affirmed. Land, J., concurs fully and specially, McFadden, P. J., dissents.*

# In the Court of Appeals of Georgia

A22A1262, A22A1263. IN THE INTEREST OF S. M., a child.

LAND, Judge, concurring fully and specially.

While I fully concur in the majority opinion, I write separately to emphasize the important role exercised by the juvenile court in this case and others like it. As the factfinder, the juvenile court is in a far better position than us to perform the role entrusted to it, i.e., observe and listen to the witnesses, assess their credibility, and find the facts. In contrast, we do not find the facts but rather review the record with appropriate deference given to the juvenile court. Here, the juvenile court found that both parents were less than candid about their drug use and concluded from the evidence before it that they had a chronic and unrehabilitated drug problem. This

finding was amply supported by the record, and a rational trier of fact could have found by clear and convincing evidence that the child was dependent. For this reason, the juvenile court's order did not improperly infringe on the parents' fiercely guarded right to the custody and control of their child.

The dissent's conclusion that this case merely involves evidence of "some methamphetamine use" blurs the distinction between the juvenile court's role as the factfinder and our role as a reviewing court. Moreover, that conclusion cannot withstand careful scrutiny. As opposed to showing a one-time lapse of judgment or a fleeting flirtation with illicit substances, the record shows that these parents have a history of drug use resulting in their participation in a drug treatment program for approximately two years. While they should be commended for participating in this program, the unfortunate reality is that the evidence shows the program did not rehabilitate them or stop their drug use. Rather, within a few short weeks of the program's conclusion, the parents were once again found to be using methamphetamine and marijuana with disturbing regularity. Under these circumstances, and in a laudable effort to protect this minor child in accordance with our law, the juvenile court rationally found by clear and convincing evidence that the

2

child was dependent and that a temporary change of custody was justified. We should

not interfere with the juvenile court's findings or its order.

# In the Court of Appeals of Georgia

A22A1262, A22A1263. IN THE INTEREST OF S. M., a child.

MCFADDEN, Presiding Judge, dissenting.

I respectfully dissent. While there is undisputed evidence of some methamphetamine use and while the juvenile court was entitled to disregard the parents' testimony minimizing their use of that drug, the department still needed to provide affirmative evidence that the parents' drug use was chronic in order for the juvenile court to infer harm. And it didn't. So I would reverse.

Our Supreme Court has long recognized that "[t]he right of parents to the care, custody, and control of their children is deeply embedded in our law [and] among the inherent rights that are derived from the law of nature." *Patten v. Ardis*, 304 Ga. 140,

141 (2) (816 SE2d 633) (2018). Indeed, "the right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances." *In the Interest of H. S.*, 285 Ga. App. 839, 843-844 (648 SE2d 143) (2007). To that end,

> even a temporary loss of custody is not authorized unless there is clear and convincing evidence that [a child's] dependency resulted from unfitness on the part of the parent . . . . Thus, only under compelling circumstances that are found to exist by such clear and convincing proof may a court sever, even temporarily, the parent-child custodial relationship.

*In the Interest of L. K.*, 353 Ga. App. 855, 861 (840 SE2d 76) (2020) (citations and punctuation omitted). And the department, not the parents, bears this burden of proof. Id. at 862.

The record does not clearly and convincingly support the juvenile court's finding of dependency. Notably, the court found that *no* evidence was presented that the child has suffered any harm, acknowledging that the parents are employed; that their residence is stable; and that they have met the child's needs. So the court inferred harm from the parents' alleged chronic, unrehabilitated methamphetamine

2

use. But the department did not meet its burden of proving by clear and convincing evidence that their methamphetamine use was chronic and unrehabilitated.

"'Chronic' is defined as 'continuing or occurring again and again for a long time,' 'always present or encountered,' or 'being such habitually.'" *In the Interest of A. W.*, 340 Ga. App. 406, 414 (1) n.23 (797 SE2d 655) (2017) (citation omitted). Here, the evidence shows some methamphetamine use in a one-month period: the parents' admissions at the hearing of a one-time use in late November or early December 2021 and the case manager's testimony that the parents admitted using methamphetamine in the week before December 24. This evidence falls short of clearly and convincingly showing methamphetamine use "occurring again and again for a long time." Id. (punctuation omitted). See also *In the Interest of C. G.*, 324 Ga. App. 110, 116 (749 SE2d 411) (2013); *In the Interest of G. M.*, 347 Ga. App. 487, 492, (819 SE2d 909) (2018) (physical precedent only). So the juvenile court erred in inferring harm. *In the Interest of G. M.*, 347 Ga. App. at 492 (evidence was insufficient to allow inference of harm); *In the Interest of A. W.*, 340 Ga. App. 406, 414 (1) (797 SE2d 655) (2017) (juvenile court erred by inferring harm as evidence that mother had used methamphetamine for six weeks was insufficient to show long-term, unrehabilitated drug use).

It is certainly true that our role as a reviewing court requires us to defer to the juvenile court's role as the factfinder. The standard of review is any-evidence. See *In the Interest of V. G.*, 352 Ga. App. 404, 409 (1) (a) (834 SE2d 901) (2019). But here the only evidence of methamphetamine use during the dispositive period established only two instances of methamphetamine use by each parent. Each parent admitted to using it once in late November or early December, and the case manager testified that they had admitted to using it in late December.

The trial court was, of course, authorized to disbelieve and disregard the parents' testimony minimizing their use of the drug. And there does appear to be good reason to suspect additional use. But I cannot agree that, as our case law has defined "chronic use," there was any clear and convincing evidence of chronic use.

"While we cannot say that the facts in this case would never merit a finding of dependency, under these circumstances, where the (d)epartment has failed to demonstrate harm to the child, clear and convincing evidence of dependency has not been established." *In the Interest of V . G.*, 352 Ga. App. 404, 412-413 (1) (b) (834 SE2d 901) (2019) (citation and punctuation omitted). I would reverse the order finding the child to be a dependent child and awarding temporary custody to the department.

4